

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JANIE MYLES                                                                       PLAINTIFF

VS.                                                                      CIVIL ACTION NO. 3:19-cv-125-DPJFKB

HINDS COUNTY SHERIFF VICTOR MASON,
IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES,
AND HINDS COUNTY, MISSISSIPPI                              DEFENDANTS

**COMPLAINT**
(Jury Trial Demanded)

**COMES NOW**, Plaintiff Janie Myles, by and through her attorney, Lisa M. Ross, and files this her Complaint against the Defendants, as follows:

**JURISDICTION AND VENUE**

1. This suit is authorized and instituted pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to these claims acts complained of by Plaintiff occurred in the Northern Division of Southern District of Mississippi.

## PARTIES

3. Plaintiff Janie Myles (hereinafter "Myles") is an adult African-American female resident citizen of Hinds County, Mississippi.

4. Defendant Victor Mason (hereinafter "Mason") is the Sheriff of Hinds County, Mississippi. At all times material herein, Mason was acting as a policy maker and within the course and scope of his employment as Sheriff of Hinds County, Mississippi. Mason, who enjoyed the exclusive right to hire and fire employees, may be served with process of this Court by service on him at his business address at the Hinds County Sheriff's Office, 407 East Pascagoula Street, Jackson, Mississippi. Victor Mason also is sued in his individual capacity.

5. Defendant Hinds County, Mississippi is a county organized and existing under and by virtue of the laws of the State of Mississippi. This defendant may be served with process of this Court in care of its agent for service, Darrel McQuirter, President, Hinds County Board of Supervisors, Hinds County Chancery Court Building, 316 South President Street, Jackson, Mississippi.

## STATEMENT OF FACTS

6. On or about January 4, 2016, Victor Mason took the oath of office as sheriff of Hinds County, Mississippi Sheriff. At that time, Janie Myles was employed as a Sergeant in the Civil Process Division of the Hinds County Sheriff's Department, where she had been employed for more than 20 years.

7. Approximately two months after Victor Mason became sheriff, he promoted Janie Myles from Sergeant to Lieutenant in the Civil Process Division. As a Lieutenant in the

Civil Process Division, Janie Myles supervised seven employees, five deputies and two administrative assistants.

8. Before Victor Mason promoted Janie Myles, he sent sexually tinged text messages to at least three female employees and requested sexual favors from them in exchange for working for the sheriff's department. In June of 2016, Victor Mason began sending Janie Myles sexually explicit text messages. Victor Mason repeatedly told Janie Myles he wanted to "fuck" her in text messages and in telephone conversations. Victor Mason invited Janie Myles to his office to lie down under the blanket on his couch while having sex with him. Victor Mason instructed Janie Myles to enter his office through the back door and to accompany him to the bathroom to have sex.

9. Victor Mason sent Janie Myles text messages in the morning, throughout the work day and into the night. In between the text message exchanges, Victor Mason telephoned Janie Myles to demand sexual favors. Janie Myles was not the only female employee of the Hinds County Sheriff's Department that Victor Mason sexually harassed after he became sheriff.

10. Janie Myles told Victor Mason she was not interested in him and asked him to stop asking her for sexual favors. Since Victor Mason was the person in the sheriff's department who had the sole authority to hire and fire employees, Janie Myles did not have anyone to report Mason to. Victor Mason did not stop making unwanted and unwelcomed sexual advances on Janie Myles until September of 2016 when Alicia Alexander complained that Janie Myles caused her to be falsely arrested.

11. During the investigation of Alicia Alexander's complaint, Captain Richard Brown called Janie Myles and told her Victor Mason directed him to dump her cell phone. Janie

3

Myles told Captain Brown he could dump her cell phone but he was going to find sexually explicit text messages from Victor Mason. Captain Brown told Janie Myles he would get back to her. When Captain Brown called Janie Myles back, he told her Victor Mason told him to forget about dumping her cell phone. Janie Myles told Captain Brown about Victor Mason sexually harassing her. Captain Brown obtained a written statement from Janie Myles about the Alicia Alexander incident. No action was taken on Janie Myles's complaint about Victor Mason sexually harassing her.

12. Janie Myles was suspended with pay for two weeks. On October 17, 2016, Victor Mason demoted Janie Myles from Lieutenant to Sergeant. Janie Myles was placed on probation for 90 days.

13. On December 28, 2016, Cheryl Matory sued Victor Mason for sexual harassment. On January 20, 2017, Cheryl Matory amended her Complaint and added Tomeca Barnes as a plaintiff. Like Cheryl Matory, Tomeca Barnes sued Victor Mason for sexual harassment. On February 21, 2017, Belendia Jones filed a lawsuit against Victor Mason alleging he sexually harassed her.

14. Before Belendia Jones filed her lawsuit, Victor Mason learned she allegedly showed their text message exchanges to employees of the sheriff's department. Victor Mason sought assistance from a mutual friend who invited Belendia Jones to attend a meeting with him in Victor Mason's office. During that meeting, Sheriff Mason apologized to Belendia Jones, promised to send her to the law enforcement training academy and asked her not to show her text messages to anyone else.

15. After Belendia Jones sued Victor Mason, Captain Brown called Janie Myles and told her Victor Mason wanted to meet for breakfast at I-HOP at 474 Briarwood Drive near

4

1-55. Captain Brown, Janie Myles and Victor Mason arrived at the I-HOP in separate vehicles. Once inside of I-HOP, a waitress seated them. Captain Brown ordered breakfast and left the table to go to the men's room.

16. While Captain Brown was away from the table, Victor Mason told Janie Myles, he stopped the Federal Bureau of Investigations from arresting her after Alicia Alexander claimed Janie Myles caused her to be falsely arrested. Victor Mason directed Janie Myles to get rid of the text messages he sent her because "I don't need you filing charges on me. I don't need that right now."

17. Unbeknownst to Myles, the FBI had not contacted Victor Mason about the Alicia Alexander matter and Victor Mason had not intervened with the FBI on Janie Myles's behalf. Afraid that she would lose her job if she did not keep silent about Victor Mason's unwanted and unwelcomed sexual advances, Janie Myles erased the text messages from Victor Mason seeking sexual favors.

18. In April of 2017, Victor Mason called Janie Myles into his office, gave her badge back to her and returned her to her position as Lieutenant.

19. In August of 2017, Janie Myles complained to Victor Mason that her supervisor Captain Nathaniel Ross told an Entergy employee she got her Lieutenant's stripes back by "fucking" Victor Mason. Janie Myles asked Mason to direct Nathaniel Ross to stop spreading false rumors. Captain Ross and Janie Myles worked a sheriff's detail for Entergy.

20. Two days later, Victor Mason walked into Janie Myles's office and told her to gather her things and go home for the day. When Janie Myles returned to work on August 17, 2018, Victor Mason called her and told her to pack all of her things because he was

5

moving her to the Raymond Detention Center. Victor Mason told Janie Myles that Captain Ross did not want her in the civil process division. Victor Mason also told Janie Myles that he still had a thing going on with the text messages. At that time, Victor Mason was defending sexual harassment complaints lodged by three women.

21. Janie Myles reported to the Raymond Detention Center on August 20, 2018. Captain Vincent Williams told Janie Myles, Victor Mason instructed him to find an empty office for her. During the week of August 20th through the 24th and on August 27, 2018, Janie Myles sat in her patrol car at the Raymond Detention Center because she did not have an office. When Janie Myles was assigned an office, the office did not have a working telephone and she did not have a computer to perform her job duties.

22. In addition to transferring Janie Myles to a less prestigious location, Captain Ross removed Janie Myles from the Entergy detail and replaced her with his stepdaughter who was not eligible to work because she was not a certified law enforcement official.

23. While Janie Myles was stationed at the Raymond Detention Center, Michael Huff called her and told her he had been instructed not to place her on the schedule for the Mississippi State Fair. Upset by her transfer and the loss of job opportunities, Janie Myles telephoned Victor Mason to report that Michael Huff told her Captain Brian McCurley instructed him not to allow her to work the Mississippi State Fair.

24. Victor Mason asked Janie Myles if she applied to work the state fair. Janie Myles told Victor Mason she was the first sheriff's department employee to apply to work the state fair. Janie Myles asked Victor Mason what was the problem. Victor Mason told her he would call Captain McCurley to see what was going on.

6

25. After Janie Myles spoke to Victor Mason, he complained to Captain Brown about her transfer and not being allowed to work the state fair. Captain Brown told Janie Myles that he told Victor Mason that Pete Luke and the attorney for the sheriff's department were trying to upset her because they knew if they upset her, she was going to file sexual harassment charges against Victor Mason. During the Alicia Alexander litigation, Janie Myles told her county hired attorney and the sheriff's department attorney, Victor Mason had sent her sexually explicit text messages and made sexual advances toward her. No action was taken against Victor Mason and no investigation was conducted into Janie Myles's complaints about Victor Mason.

26. After Captain Brown spoke to Janie Myles, Victor Mason called Janie Myles to tell her that he had spoken to Captain McCurley. Victor Mason told Janie Myles, Captain McCurley said he was told not to allow her to work the state fair. Victor Mason told Janie Myles he instructed Brian McCurley to call her to let her know that she would be allowed to work the state fair.

27. Captain Brown subsequently called Janie Myles to tell her he was present when Victor Mason called Captain McCurley and told him to call Janie Myles to tell her she could work the state fair. Captain Brown told Janie Myles he told Victor Mason, Brian McCurley never called her.

28. After Captain Brown spoke to Victor Mason, Captain McCurley called Janie Myles and left a voice message instructing her that she could work the Mississippi State Fair. Janie Myles told Captain Brown she called Captain McCurley back and asked him why were they not going to allow her to work the Mississippi State Fair now.

7

29.     On or about September 26, 2018, undersigned counsel issued a subpoena to take the deposition of Janie Myles in *Jones v. Mason*, Civil Action, 3:17-cv-00120-HTW-JCG. On September 27, 2018, Belendia Jones was deposed in her case against Victor Mason. On October 2, 2018, counsel for the sheriff's department sent Janie Myles a text and asked her if a subpoena had been served on her. Janie Myles told her she had been served. On the same day, counsel for Hinds County, Mississippi filed a Motion to Quash Janie Myles's deposition.

30.     Prior to receiving the text message from counsel for the sheriff's department, Captain Brown told Janie Myles he was scheduled to be deposed in *Jones v. Mason*, Civil Action, 3:17-cv-00120-HTW-JCG. Captain Brown told Janie Myles, Victor Mason was scheduled to sit for a deposition and that counsel for the sheriff's department told them undersigned counsel planned to file a sexual harassment lawsuit against Victor Mason on her behalf. Captain Brown asked Janie Myles not to file a lawsuit against Victor Mason and to allow him to work with Victor Mason to get her returned to her position downtown.

31.     On October 3, 2018, Janie Myles appeared at a deposition pursuant to a subpoena and testified under oath that Victor Mason sexually harassed her during the course and scope of her employment with the Hinds County Sheriff's Department. Janie Myles testified that Victor Mason ordered her to destroy sexually explicit text messages he sent her requesting sexual favors.

32.     After Janie Myles testified in the deposition, Janie Myles continued to report to work at the Raymond Detention Center where she was not allowed to perform any duties in the Civil Process Division. At one point, Janie Myles was told she was supposed to

serve process in the Second Judicial District of Hinds County. After a few days of allowing Janie Myles to serve process, sheriff department officials halted that.

33. On October 8, 2018, Captain Nathaniel Ross completed a requisition or work order for a "computer for Lt. Janie Myles." On January 28, 2019, a computer has not been placed in the office where Janie Myles worked.

34. On January 28, 2019, Sheriff Mason wrote Janie Myles and stated": "this letter is to inform you that as of January 28, 2019, you have been terminated from the Hinds County Sheriff's Office and relieved of your duties." The letter was delivered to Janie Myles on January 29, 2019 by two warrant deputies at her Hinds County home. The following day, Victor Mason caused a flier to be posted in Hinds County building stating "<u>DO NOT ALLOW JANIE MYLES</u> into any Hinds County building without authorization from Sheriff Mason. 1/28/19"

35. At all times pertinent herein, Victor Mason used his apparent authority to proposition women for sexual favors and to condition their continued employment with the Hinds County Sheriff's Department on the willingness to have sex with him and/or to remain silent about his unlawful sexual advances toward them.

36. In addition, Victor Mason treated male employees and white employees more favorable than he treated Janie Myles. Upon information and belief, Victor Mason did not fire a male deputy who used his patrol vehicle on different dates to take two vulnerable adults to a hotel room where he allegedly had sex with them. Victor Mason invited Janie Myles to sit in on his interview with the guardian of the two vulnerable adult who reported the male deputy to Victor Mason.

37. Victor Mason did not terminate the same male deputy when he used his county-issue vehicle to transport a woman whose child had been taken away from her by the court to her mother's home to retrieve her child in the absence of a court order commanding the return of the child from the grandmother to the mother.

38. Upon information and belief, Victor Mason did not fire a male deputy who used his patrol vehicle to travel to Madison County, Mississippi to arrest a man without a warrant after the sister-in-law of the male deputy accused the man of forcibly raping her. The male deputy's sister-in-law filed a complaint with the Jackson Police Department that she had been raped. However, male deputies, including the brother-in-law of the alleged rape victim, travelled from Hinds County to Madison County to arrest the man at his job. The male deputies transported the man to the Raymond Detention Center where he was booked and charged him with forcible rape and kidnapping.

39. After a preliminary hearing in Jackson Municipal Court in which the judge heard testimony from the alleged victim and reviewed dozens of text messages the alleged victim sent the man, a Jackson Municipal Court judge dismissed the forcible rape and kidnapping charges against the man. The man, however, lost his job after his false arrest.

40. Victor Mason also did not terminate a male deputy after he was involved in three motor vehicle accidents in a county-issued vehicle. Victor Mason instituted a rule that deputies would be terminated after their third motor vehicle accident in a county-issued vehicle, but he did not follow the rule when a male deputy was involved in a third motor vehicle accident in a county-issued vehicle.

41. Victor Mason's employment with the Hinds County Sheriff's Department did not come to an end when he was sued by Cheryl Matory, Tomeca Barnes and Belendia Jones.

42.     Victor Mason's reason for terminating Janie Myles is a mere pretext to cover up his discriminatory and retaliatory actions against her for breaking her silence about his unwanted and unwelcomed sexual advances, asking him to put an end to Captain Ross telling others she got her Lieutenant's stripes back by "fucking" Victor Mason and for testifying pursuant to a subpoena in a deposition on October 3, 2018 that Victor Mason sexually harassed her and instructed her to destroy text messages he sent her requesting sexual favors.

## CAUSE OF ACTIONS
## SEXUALLY HOSTILE WORK ENVIRONMENT
## QUID PRO QUO SEXUAL HARASSMENT

43.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

44.     Plaintiff contends Mason's repeated unwanted and unwelcomed demands had the effect of unreasonably interfering with the Plaintiff's work performance and creating an intimidating, hostile and offensive working environment.

45.     Plaintiff contends Victor Mason and Hinds County, Mississippi conditioned the terms and conditions of her employment on her willingness to remain silent about Victor Mason's unwelcomed and unwanted sexual advances. At all times relevant herein, Victor Mason was the policy maker for the Hinds County Sheriff's Department and he enjoyed the exclusive right to hire and fire employees.

46.     As a proximate consequence of the actions of Mason, the Plaintiff suffered emotional harm.

## SEX DISCRIMINATION

47.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

48.     Plaintiff contends Mason subjected her to discrimination on account of her sex by continuously engaging her in sexual banter with him and asking her to destroy text messages that substantiated his unwelcomed and unwanted sexual advances.

49.     Plaintiff contends that Victor Mason treated her less fairly than he treated male employees.

50.     As a proximate consequence of the actions of Mason, the Plaintiff suffered emotional harm.

## RACE DISCRIMINATION

51.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

52.     Plaintiff contends Mason subjected her to discrimination on account of her race by treating white employees more favorably than he treated her.

53.     As a proximate consequence of the actions of Mason, the Plaintiff suffered emotional harm.

## FIRST AMENDMENT

54.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

55.     Plaintiff contends that Victor Mason terminated her because she broke her silence about his unwanted and unwelcomed sexual advances toward her, because she testified in a deposition pursuant to a subpoena and because she would not agree not to sue him for sexual harassment.

56.     As a proximate consequence of the actions of Mason, the Plaintiff suffered economic and emotional harm.

## DAMAGES

57.     As a consequence of the foregoing misconduct of the defendants, Janie Myles sustained pain and suffering, physical injury, great mental distress, depression, insomnia, shock, fright and humiliation.

58.     As a consequence of the foregoing misconduct of the Defendants, Janie Myles has been damaged in an amount exceeding the jurisdictional requirements of this Court.

## RELIEF

59.     Plaintiff requests that the Court issue the following relief:

  a. Enter declaratory relief declaring that the Defendants engaged in sexually hostile work place harassment, quid pro quo sexual harassment and sex discrimination by conditioning Plaintiff's employment on her willingness to conceal Victor Mason's unwanted and unwelcomed sexual advances.

  b. Enter an Order enjoining the Defendants from engaging in sexual harassment and sex and race discrimination in the future.

  c. Enter an Order enjoining the Defendants from terminating employees who exercise their First Amendment right to free speech.

  d. Award the Plaintiff reinstatement or in the alternative front pay, equitable back pay, economic damages for their lost pay and fringe benefits, together with compensatory from Hinds County, Mississippi and compensatory and punitive damages against Victor Mason for intentional sex and race discrimination, sexual harassment, retaliation in an amount to be determined by a jury of their peers.

  e. Award Plaintiff attorney fees, costs and expenses of litigation and;

f.  Award such other relief to which Plaintiff may be entitled under law.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff demands judgment against the Defendants in an amount exceeding the jurisdictional requirements of this Court, all together with the costs and disbursement action, including attorneys' fees, plus interest, and for any other relief which this Court deems just and proper.

**RESPECTFULLY SUBMITTED** this, the 15th of February, 2019.

JANIE MYLES

By: *Lisa M. Ross*
Lisa M. Ross (MSB#9755)
P.O. Box 11264
Jackson, MS 39283-1264
(601) 981-7900 (telephone)
(601) 981-7917 (facsimile)
lross@lmrossatlaw.com

Attorney for Plaintiff