UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JANIE MYLES                                                      PLAINTIFF

V.                                        CIVIL ACTION NO. 3:19-CV-125-DPJ-FKB

HINDS COUNTY SHERIFF VICTOR                          DEFENDANTS
MASON IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES, AND HINDS
COUNTY, MISSISSIPPI

ORDER

This sexual-harassment dispute is before the Court on Defendants' Motion for Summary

Judgment [37].  For the following reasons, the Court finds that Defendants Hinds County and

Sheriff Victor Mason, in his official capacity, are entitled to summary judgment.  Regarding the

individual-capacity claims against Mason, the motion is granted as to Plaintiff Janie Myles's

race- and sex-discrimination claims but denied as to her sexual-harassment and First Amendment

retaliation claims.

I.      Background

Janie Myles was a twenty-three-year veteran of the Hinds County Sheriff's Office when

Defendant Victor Mason became sheriff "on or about January 4, 2016."  Compl. [1] ¶ 6; *accord*

Myles Dep. [37-2] at 173.  Myles claims that Mason subjected her to sexual harassment,

discriminated against her based on race and sex, and ultimately fired her in retaliation for

testifying against him in another woman's sexual-harassment suit.  Compl. [1] ¶¶ 44–45, 48–49,

52, 55.

Myles says the discriminatory conduct all began in June 2016, and included "sexually

explicit text messages," requests for sexual favors, and an invitation to have sex in Mason's

office during working hours.  *Id.* ¶ 8.  According to Myles, Mason sent the offensive text

messages "all throughout the day," "in the evening," and "at night after 10 o'clock," and "called [her] after hours" to demand sexual favors. Myles Dep. [37-1] at 51–52, 81. Myles further contends that most "every time he called [her] in the office"—two to three times a week—he would stick out his tongue and "just roll it around his lips" while staring at her. Myles Dep. [37-2] at 80–81. He would make that same gesture "each morning" when he walked through the office while also looking Myles "up and down." *Id.* at 82. Myles also claims that once or twice a week Mason took her to lunch to discuss having sex with her. *Id.* at 116–18. Apparently, there was never any physical contact between the two.

Myles maintains that her acceptance of Mason's harassment was a condition of her employment. Compl. [1] ¶ 45. Specifically, she says Mason offered to promote her to undersheriff in June 2016 but said she would "have to do some things." Myles Dep. [37-2] at 131. Myles admits she did not know what Mason meant, but she assumed he was referring to sexual favors. *Id.* Myles was never promoted to undersheriff. Mason Dep. [37-3] at 17–18.

In September 2016, Myles told Mason to stop asking her for sexual favors. Myles Dep. [37-2] at 88. Mason honored that request. That same month, a civilian claimed that Myles caused her to be falsely arrested. Oct. 8, 2018 Barker Mem. [37-4] at 3–4. Mason then disciplined Myles and demoted her from lieutenant to sergeant. Order of Demotion [37-6].

In February 2017—four months after demoting Myles—Mason became embroiled in other sexual-harassment claims and allegedly asked Myles to delete the harassing text messages he had sent to her. Myles Dep. [37-2] at 208. Myles complied, and one month later Mason restored her to her previous lieutenant rank. Order of Promotion [37-8].

According to Defendants, Myles was the subject of another complaint in June 2018, when an employee filed a formal harassment grievance against her. *See* Grievance [37-10].

2

Based on that and other concerns, Myles's supervisor, Captain Nate Ross, recommended that Mason terminate Myles's employment or transfer her to another assignment.  *See* Ross Letter [37-12].  Mason elected to transfer Myles to the Raymond Detention Center (RDC) on August 17, 2018, an arguably less favorable work assignment.  Myles Dep. [37-2] at 270; Compl. [1] ¶¶ 20–22.

Myles tells a different story and alleges that the transfer decision related to her complaints about being the subject of office gossip.  As she tells it, Captain Ross informed a third party that Myles "f***** the sheriff to get [her] stripes back."  Myles Dep. [37-2] at 270. When Myles learned about the statement, she took her concerns to Mason; two days later, Mason sent her home early.  When Myles returned to work, Mason reassigned her to the RDC.  Compl. [1] ¶¶ 19–20, 22–23; Myles Dep. [37-2] at 270.

Mason eventually fired Myles on January 28, 2019; Myles says it was in retaliation for testifying against him in a different sexual-harassment suit.  Termination Letter [37-17] at 1; Compl. [1] ¶ 55.  According to Myles, Mason somehow learned that she might testify.  Myles Dep. [37-2] at 145–47.  She then received a call from Captain Richard Brown—who was with Mason on speakerphone—hoping to discourage her attendance at the deposition.  *Id.*  According to Myles, Brown and Mason told her "don't do the deposition."  *Id.* at 145.  They also told her "[i]t may not come out good" if she did, which she perceived as a threat to her employment.  *Id.* at 147.  After that first call, Brown allegedly continued calling Myles up until the deposition to dissuade her attendance.  *Id.* at 280.

Myles gave her deposition testimony on October 3, 2018, and believes she was terminated for doing so.  Subpoena [40-11] at 1; Compl. [1] ¶¶ 31, 54–55.  Five days after she testified, the in-house counsel for the Sheriff's Office, Claire Barker, wrote a memorandum

addressing Myles's "ongoing disciplinary issues."  Oct. 8, 2018 Barker Mem. [37-4] at 1–2.  The

memorandum mentioned insubordination, harassment and intimidation, and the alleged false

arrest in October 2016.  *Id.* at 1–3.

An internal-affairs investigation apparently came next regarding an incident involving

Myles's daughter-in-law.  At the conclusion of the review, Barker wrote another memorandum

dated January 16, 2019, in which she summarized the finding that Myles "abused her authority

when she pulled over her son and daughter[-]in[-]law in her official vehicle and threatened to

handcuff and arrest her daughter[-]in[-]law."  Jan. 16, 2019 Barker Mem. [37-16] at 1.  The

memorandum does not say when the incident occurred, but it does recommend termination from

employment.  *Id.*  Mason then fired Myles on January 28, 2019, citing the incident with Myles's

daughter-in-law and the previous false arrest allegation in October 2016.  Termination Letter

[37-17] at 1.

Feeling aggrieved, Myles sued Hinds County and Sheriff Victor Mason under 42

U.S.C. § 1983, alleging claims under the First and Fourteenth Amendments to the United States

Constitution.  Compl. [1] ¶ 1.  The Court must now decide whether to grant Defendants' motion

for summary judgment [37], which has been fully briefed.  Both personal and subject-matter

jurisdiction exist over the claims.

II.     Summary-Judgment Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence

reveals no genuine dispute regarding any material fact and that the moving party is entitled to

judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

Finally, Defendants frequently argue that Myles has no evidence corroborating her accounts of Mason's alleged inappropriate sexual propositions.  *See, e.g.*, Defs.' Mem. [38] at 2–3.  But Myles's sworn testimony does not require corroboration and may alone create a question of fact.  *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007) (explaining that the plaintiff's deposition testimony describing his harassment was "appropriate for review" on summary judgment and raised a fact issue as to the time frame of his harassment).

III.     Analysis

    A.     Sexual-Harassment Claims

Myles says Mason violated her right to equal protection under the Fourteenth Amendment to the United States Constitution.  Compl. [1] ¶¶ 43–44.  She therefore pursues a claim under 42 U.S.C. § 1983, which allows a private action against anyone who, while acting under color of state law, violates "rights protected by the Federal Constitution or created by federal statute or regulation."

Section 1983 and Title VII sexual-harassment claims are analyzed under the same standard, as the two are "parallel causes of action."  *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 166 (5th Cir. 2007) (citing *Cervantez v. Bexar Cnty. Civ. Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996)).  Under this standard, sexual-harassment claims are first classified as either hostile-work-environment claims or quid pro quo claims.  *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000).  The distinction turns on whether the plaintiff suffered a "tangible employment action."  *Id.* at 283.

 A "tangible employment action" is a decision that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington v. Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  If an employee suffered a "tangible employment action," then the "suit is classified as a 'quid pro quo' case; if [s]he has not, [her] suit is classified as a 'hostile environment' case."  *Casiano*, 213 F.3d at 283.  Myles alleges both. Compl. [1] ¶¶ 44–45.

1.    Quid Pro Quo Claim

Myles argues that Mason engaged in quid pro quo harassment when he failed to promote her to undersheriff, transferred her to the RDC, and when he terminated her employment.  Myles Dep. [37-2] at 131; Pl.'s Mem. [42] at 12–13.  To establish a quid pro quo claim based on these actions, Myles must show that they constitute "tangible employment action[s]" and also that the actions "resulted from [her] acceptance or rejection of [her] supervisor's alleged sexual harassment."  *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481–82 (5th Cir. 2002).

Starting with the alleged comments regarding the undersheriff position, Myles has created a question of fact.  According to Myles, Cheryl Matory held the undersheriff position until Mason demoted her.  Myles Dep. [37-2] at 130.  Like Myles, Matory claims Mason sexually harassed her.  Charge of Discrimination [40-1].  Mason allegedly asked Myles if she was interested in the promotion, and when she said "yes," he replied:  "You have to do some things."  Myles Dep. [37-2] at 131.  Myles—who never acquiesced to the sexual demands—did not receive the promotion.

Defendants correctly note that Myles could only assume what Mason meant by his comments, but given her testimony about pervasive demands for sex, a reasonable jury could connect those dots and conclude that her refusal to have sex blocked the promotion.  Defendants also deny that Mason made that statement or even discussed the undersheriff position with Myles.  *See* Defs.' Reply [46] at 4–5.  But that merely identifies a question of fact.  Myles has shown enough to surpass summary judgment on this portion of her claim.

Myles also says the demotion to the RDC and her termination resulted from quid pro quo harassment.  These claims are less clear, but "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would

be to proceed to a full trial.'"  *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir.

2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Here, the evidence

regarding the RDC transfer and termination should be the same as the hostile-work-environment

and First Amendment retaliation claims, both of which will move forward.  The Court therefore

concludes that the RDC and termination aspects of the quid pro quo claim should proceed to

trial.

> ### 2.      Hostile-Work-Environment Claim

If an employee cannot raise a quid pro quo claim, the case is analyzed as a hostile-work-

environment claim.  *Casiano*, 213 F.3d 278, 284.  To state a hostile-work-environment claim, the

employee must show five elements:  "(1) the victim belongs to a protected group; (2) the victim

was subjected to unwelcome harassment; (3) the harassment was based on a protected

characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5)

the victim's employer knew or should have known of the harassment and failed to take prompt

remedial action."  *E.E.O.C.*, 496 F.3d at 399.  The parties dispute only element four—whether

Mason's alleged harassment affected a term, condition, or privilege of Myles's employment.

Alleged harassment affects a term, condition, or privilege of employment when the

conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive work environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)

(quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  The conduct "must be both

objectively and subjectively offensive" so that the victim perceives it as hostile and a reasonable

person would also find it hostile.  *E.E.O.C.*, 496 F.3d at 399.

Whether the environment is objectively offensive is based on a totality of the

circumstances, such as "(1) the frequency of the discriminatory conduct; (2) its severity; (3)

whether it is physically threatening or humiliating or merely an offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* (citing *Harris*, 510 U.S. at 23).

Defendants argue that the alleged conduct was neither severe nor pervasive enough to create a hostile environment, but the Court finds that the alleged pervasiveness of conduct creates a question of fact. Specifically, Myles testified that for approximately four months Mason "called [her] all throughout the day[,] . . . in the evening[, and] at night after 10 o'clock" to discuss having sex with her. Myles Dep. [37-1] at 51–52. He did the same through text messages, *id.*, and she says that "everyday" he would invite her to have sex with him in his office during working hours. *Id.* at 57–58. Myles also testified that once or twice a week Mason asked her to lunch to discuss sex, *id.* at 117–18, and that he regularly made gestures—like licking his lips while looking her up and down—that a reasonable jury could find sexually offensive, Myles Dep. [37-2] at 80–81.

Defendants deny these allegations, but that denial merely indicates a question of fact. They also challenged the admissibility of certain evidence, but that argument is underdeveloped. And even if some evidence is eventually inadmissible on hearsay grounds, there exists enough admissible evidence from Myles's own testimony about what Mason said and did to allow a jury to decide whether the alleged conduct was sufficiently severe or pervasive. *See* Fed. R. Evid. 801(d)(2).

At bottom, this alleged four-month pattern of continual propositions is enough to survive summary judgment. *See Lauderdale*, 512 F.3d at 164 (finding supervisor calling plaintiff "ten to fifteen times a night for almost four months" displayed "unwanted attention" that amounted to pervasive harassment); *see also Rice v. Fair*, No. 3:17-CV-932-DPJ-FKB, 2019 WL 1907458, at

*3 (S.D. Miss. Apr. 29, 2019) (finding a jury question on plaintiff's hostile-work-environment claim because "[Plaintiff] testified that [harasser] called and texted her numerous times after hours to ask her out [and] made suggestive and sexual comments two to three times a day" over three months).  Defendants' summary-judgment motion on Myles's hostile-work-environment claim is denied.[1]

> B.      Race-Discrimination Claim

Myles also brings a race-discrimination claim under § 1983 and the Fourteenth Amendment, alleging that Mason "treat[ed] white employees more favorably than he treated her." Compl. [1] ¶¶ 51–53.  Defendants say they are entitled to summary judgment because Myles failed to show any evidence of differential treatment.  Defs.' Mem. [38] at 20–21.  Myles did not respond to Defendants' arguments and appears to have conceded the claims.  *See* Pls.' Mem. [42] at 2 (asking Court to deny summary judgment on sex-discrimination, sexual-harassment, and First Amendment claims).  Her race-discrimination claims are therefore

---

[1] Defendants compare these facts to cases where the Fifth Circuit held—as a matter of law—that alleged conduct was not objectively offensive.  *See, e.g.*, Defs.' Mem. [38] at 13–14 (citing *Hockman v. Westward Commc'n, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (holding that no reasonable jury could find objectively offensive conduct where coworker slapped plaintiff on the buttocks with a newspaper, grabbed or brushed up against her breasts and buttocks, and attempted to kiss her against her will); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872 (5th Cir. 1999) (holding, as a matter of law, that it was not objectively offensive for a co-worker to make unwelcomed sexual remarks about plaintiff's body, including her nipples; touch her arms, wrists, and shoulders without permission; look down her shirt; and make other boorish comments over a two-year period)).  *Hockman* and *Shephard* have not aged well.  Most notably, they applied the wrong legal standard for objectively offensive conduct, requiring proof that the conduct was both severe *and* pervasive.  *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 403 (5th Cir. 2013) (Jolly, J.) (criticizing *Hockman* and *Shephard* for the applying the wrong standard).  Moreover, much has happened since 2004.  The Court doubts the Fifth Circuit would now say that no reasonable jury could find such conduct objectively offensive. Regardless, the facts in this case are more pervasive.

dismissed.  *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment.").

      C.      Sex-Discrimination Claim

      Myles asserts a separate sex-discrimination claim against Mason for violating her equal-protection rights under the Fourteenth Amendment, but she pays little attention to the claim in her summary-judgment response.  Instead, she merely incorporates her arguments regarding sexual harassment and notes that "under certain circumstances sexual harassment will constitute . . . gender employment discrimination."  Pl.'s Mem. [42] at 18 (quoting *Simmons v. Lyons*, 746 F.2d 265, 270–71 (5th Cir. 1984)).

      *Simmons* was an early case acknowledging that sexual harassment can violate Title VII. 746 F.2d at 269–70.  It did not create a separate cause of action for the same alleged discrimination.  And to the extent Myles hints at a sex-discrimination claim based on her transfer to the RDC or her termination from employment, she never responds to Defendants' argument that she fails to identify a comparator.

      To establish a valid comparator as part of her prima facie case, Myles was required to show that Mason treated her less favorably than a similarly situated male employee under "nearly identical" circumstances.  *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012), *as revised* (June 22, 2012) (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."  *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted).  The conduct must also be "nearly

11

identical." *Id.* Defendants squarely raise this point in their opening memorandum, and Myles never responds. Defs.' Mem. [38] at 18–19. Her separate sex-discrimination claim is therefore dismissed; the alleged discrimination will be tried under the sexual-harassment theories.

D.      Qualified Immunity

Mason argues that he "is entitled to qualified immunity in this matter for the claims made against him in his individual capacity for sexual harassment, gender discrimination, and race discrimination." Defs.' Mem. [38] at 10. He makes no such argument regarding the First Amendment Claim, which will be discussed next.

As noted above, the race- and sex-discrimination claims will be dismissed. As to Myles's sexual-harassment claims against Mason in his individual capacity, he is not entitled to qualified immunity. The Fifth Circuit has held that "qualified immunity can never offer protection for sexual harassment because, if it is actionable at all, the harassment is by definition objectively offensive and unreasonable, and qualified immunity protects only the 'objectively reasonable.'" *Lauderdale*, 512 F.3d at 166–67. Because Myles presents a fact issue on her sexual-harassment claims, Mason is not entitled to qualified immunity under Rule 56.

E.      First Amendment Retaliation Claim

Myles says Mason violated her First Amendment right to free speech when he terminated her employment for testifying against him in another woman's sexual-harassment suit. Compl. [1] ¶¶ 54–56. Defendants contend that she did not speak as a citizen on a matter of public concern, has failed prove causation, and would have been fired anyway. Defs.' Mem. [38] at 24.

It is well-established that "[p]ublic employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's

right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 691 (5th Cir. 2007).

The Court applies a four-pronged test to determine whether a plaintiff states a prima facie case of retaliation. *Hurst v. Lee Cnty.*, 764 F.3d 480, 484 (5th Cir. 2014). Under this test, she must show that "(1) [she] suffered an adverse employment decision[;] (2) [her] speech involved a matter of public concern[;] (3) [her] interest in speaking outweighed the governmental defendant's interest in promoting efficiency[;] and (4) the protected speech motivated the defendant's conduct." *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015) (quoting *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc)). Defendants concede the first prong but contest the rest. That said, they do little more than mention prongs two and three, focusing their attention on the fourth prong—causation.

Starting with the second prong, the threshold inquiry is whether Myles was "speaking as a citizen on a matter of public concern." *Hurst*, 764 F.3d at 484 (citing *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008)). The Supreme Court refined that inquiry in *Garcetti v. Ceballos*, holding that employees do not speak as citizens when they speak "pursuant to their official duties." 547 U.S. 410, 421 (2006). Whether the employee spoke as a citizen and spoke on a matter of public concern are questions of law. *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015).

Defendants say Myles "did not speak as a private citizen or on a matter of public concern," but they never explore that argument. Defs.' Mem. [38] at 25. Based on this record, the facts seem similar to those in *Lane v. Franks*, 573 U.S. 228, 240 (2014). There, the plaintiff fired a subordinate employee and later testified under subpoena before a federal grand jury regarding his reasons for doing so. *Id.* at 232. The Supreme Court held: "Truthful testimony

13

under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes . . . even when the testimony relates to his public employment or concerns information learned during that employment." *Id.* at 238. Indeed, "[s]worn testimony in judicial proceedings is a quintessential example of speech as a citizen." *Id.* at 238–39. Here, Myles testified under subpoena in a sexual-harassment suit that another woman filed against Mason. Defendants have not argued that she was untruthful in that deposition, and there is nothing in this record suggesting that her ordinary job responsibilities included compelled testimony in civil suits. To the contrary, Myles testified that Mason discouraged her testimony. Myles Dep. [37-2] at 144–46.

As for the nature of the speech, "[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Gibson v. Kilpatrick*, 838 F.3d 476, 482 (5th Cir. 2016) (internal quotation marks omitted) (quoting *Lane*, 573 U.S. at 241). "[P]ublic concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). This is a sometimes-tricky issue, and Defendants have not pressed the point sufficiently to dismiss the claim on this basis. At least on the surface, compelled testimony related to an elected official's alleged sexual harassment would be of public rather than private concern.[2]

---

[2] Defendants note in reply that Myles never provided her deposition testimony. But to the extent Defendants contend that the specific testimony was not of public concern, Mason no doubt had access to the transcript from the other lawsuit against him and could have raised that issue in the opening memorandum. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs)."

14

Defendants also touch on, but never press, the third prong of the prima facie case—
whether Myles's "interest in the speech outweighs the government's interest in efficient
provision of public services." Defs.' Mem. [38] at 24; *see also Pickering v. Bd. of Educ.*, 391
U.S. 563, 568 (1968) ("The problem in any case is to arrive at a balance between the interests of
the [employee], as a citizen, in commenting upon matters of public concern and the interest of
the State, as an employer, in promoting efficiency of the public services it performs . . . .").
According to the Fifth Circuit, good-faith reports of workplace sexual harassment "outweigh[]
any interest in departmental efficiency and harmony." *Wilson v. UT Health Ctr.*, 973 F.2d 1263,
1270 (5th Cir. 1992). Myles has presented enough evidence to send this issue to the jury. *See
Branton v. City of Dall.*, 272 F.3d at 743 (finding fact issue because record contained no
evidence that statements about misconduct were made in bad faith).

That leaves the issue Defendants did press—causation. To survive summary judgment,
Myles must raise a fact issue whether the deposition was a motivating factor in her termination
from employment. *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992) (citing *Mt. Healthy City
Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Myles meets that burden in two
ways—proof that she was threatened against testifying and the timing of her termination from
employment. First, Myles testified that Mason and Captain Richard Brown told her "don't do
the deposition," Myles Dep. [37-2] at 145, and warned her that "[i]t may not come out good" if
she did, *id.* at 147. A reasonable juror could view those statements as threats.

Second, the termination came shortly after her October 3, 2018, deposition testimony.
Five days after she testified, the wheels of termination began to turn when counsel for the
Sheriff's Office produced a memorandum "memorializ[ing] [Myles's] ongoing disciplinary
issues" since October 2016. Oct. 8, 2018 Barker Memo. [37-4] at 1. Mason fired Myles

approximately three months later, on January 28, 2019.  Termination Letter [37-17] at 1.  The

Court fully understands that there is another side to this story, but under Rule 56, the facts must

be viewed in the light most favorable to Myles.  In that light, causation for the termination is a

question of fact.  *See Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that time

frame of "up to four months has been found sufficient to satisfy the causal connection for

summary judgment" in retaliation cases).

Finally, Defendants alternatively offer an affirmative defense in their reply, citing *Mt.*

*Healthy v. City School District Board of Education*, 429 U.S. 274 (1977).  Under *Mt. Healthy*, "a

public employee who is discharged or otherwise disciplined for engaging in constitutionally

protected conduct is not entitled to any relief if the employer can prove that it would have taken

the same action absent that conduct."  *Scott v. Flowers*, 910 F.2d 201, 209 (5th Cir. 1990).  But

Defendants did not raise this issue until reply and have therefore waived it, at least for now.  *See*

*Gillaspy*, 278 F. App'x at 315.  Regardless, the Court would reject the argument at the summary-

judgment stage.[3]

F.     Claims Against Hinds County

Myles asserts claims against Hinds County and Mason in his official capacity; the latter

are the same as claims against the county.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  A

plaintiff can hold a municipality liable under § 1983 by showing that her constitutional

deprivation was the result of the municipality's execution of a policy or custom.  *Monell v. Dep't*

*of Soc. Servs.*, 436 U.S. 658, 694 (1986).   Municipal liability therefore requires "proof of three

elements:  a policymaker; an official policy; and a violation of constitutional rights whose

---

[3] While this will certainly be an issue at trial, "[o]btaining judgment as a matter of law on this type of affirmative defense is an 'uphill climb.'"  *Mayeaux v. Hous. Indep. Sch. Dist.*, 986 F. Supp. 2d 842, 848 (S.D. Tex. 2014) (Costa, J.).

'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

Defendants say Hinds County is not liable for Mason's actions because Myles has not identified either a constitutional violation or a policy or custom that was the "moving force" behind Mason's actions. Defs.' Mem. [38] at 21–23. Their first argument is a non-starter because Myles created a question of fact whether Mason violated her constitutional rights.

But Myles never squarely addresses Defendants' second argument—that she neglected to identify a policy or custom that was the moving force behind the constitutional violation. Instead, she states—without explanation—that her "failure to identify the existence of an official policy is not fatal to her 1983 claim for sexual harassment." Pl.'s Mem. [42] at 23. That's incorrect. *See Piotrowski*, 237 F.3d at 578.

When responding to a motion for summary judgment, the non-movant "must identify specific evidence in the record and articulate the manner in which that evidence supports [her] claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Here, there are various ways to establish the policy-or-custom element of a municipal-liability claim, but Myles never addresses them. Myles is represented by experienced and capable counsel who may have valid strategic or other reasons for that decision. Moreover, the Court does not wish to speculate about what she might have argued—especially when the legal issues related to this element are tricky and fact dependent. Accordingly, on this argument, Myles has not established a prima facie case against Hinds County or Sheriff Mason in his official capacity. Those portions of the summary-judgment motion are therefore granted.

IV.    Conclusion

The Court has considered all arguments, and there are several that did not merit discussion.  They would not have changed the outcome.  For the foregoing reasons, Defendants' Motion for Summary Judgment [37] is granted in part and denied in part.

Finally, the Court conducted a status conference with counsel on December 1, 2020. During that call, the parties indicated a willingness to explore settlement if any portion of this case survived summary judgment.  It was decided, therefore, to push back the pretrial conference to allow time for those conversations.  The case is therefore set for pretrial conference on February 12, 2021.  If that date presents a conflict or leaves too little time for mediation, counsel may contact the courtroom deputy for a new date.  Before the pretrial conference is conducted, the parties shall participate in mediation or a settlement conference.  Given uncertainties caused by the Coronavirus pandemic, a trial date will be set at the pretrial conference.

**SO ORDERED AND ADJUDGED** this the 10th day of December, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE